Casey, C. J.,
delivered the opinion of the court:
This case has its inception in the following order:
WAR DEPARTMENT,
Washington City, September 10, 1861.
Major General B. F. Butler is hereby authorized to raise, organize, and uniform and equip a volunteer force for the war, in the New England States, not exceeding six (6) regiments of the maximum standard, of such arms, and in such proportions, and in such manner as he may judge expedient; and for this purpose, his orders and requisitions in the quartermaster, ordnance, and other staff departments of the army are to be obeyed and answered, provided the cost of such recruitment, armament, and equipment does not exceed, in the aggregate, that of like troops now or hereafter raised for the service of the United States.
SIMON CAMERON,

Secretary of War.

On the 7th October, 1861, General Butler entered into a written contract with the claimant, by which the latter agreed to furnish to the United State, within fifteen days, not exceeding six thousand Minie rifles, of the Liege pattern, with sabre bayonets and all appendages complete, and subject to the inspection of an ordnance officer of the United States army, the United States to pay to claimant the sum of twenty-seven dollars for each gun so delivered, “ or such less sum *387 as the Ordnance department may have paid for guns like in quality and description, or contracted to pay for to said Garrison.” An addition to the contract, without date, signed by General Butler, is as follows :
It is agreed by the United States to accept from C. K. Garrison, the contractor, the long Enfield rifles, with bayonet of the triangular pattern, in place of the sabre bayonet, upon the value conditions as are herein specified.
B. F. BUTLER,

Major General Commanding.

On the 9th November, 1861, Garrison had delivered two thousand eight hundred Enfield rifles, with triangular bayonets, for which he was then paid at the rate of twenty-seven dollars per gun, amounting to the sum of seventy-five thousand six hundred dollars. By the 11th December, 1861, the balance of the guns, viz : three thousand two hundred (3,200) of the same make and pattern of the others were delivered. No guns of the Liege pattern were delivered under the contract.
Under orders received from the War Department, the ordnance officer paid but twenty dollars on each gun, and deducted from the amount claimed by Garrison the sum of twenty-two thousand four hundred dollars, ($22,400.) He prosecutes this suit to recover this amount.
On the trial some very difficult and abstruse questions were raised and discussed. Among these questions were the power of General Butler to make this contract, and the right of the President to confer such authority upon him ; also, whether there was such an exigency as justified a departure from the ordinary mode of making contracts, by advertising for proposals, and whether General Butler had a right to decide on such exigency ; and whether his decision was conclusive, or subject to review here. But in the view we take of this case we are relieved' from entering on the consideration of these questions in this cause, as its decision must rest on other grounds. The contract recited fixes the price for the Liege guns at twenty-seven dollars, or such less sum as the Ordnance department may have paid for guns of the same quality, or such price as they had contracted to pay to the claimant for similar guns. The evidence shows that the government had, previous to the date of this contract, agreed to take from the claimant guns of the Liege pattern with sabre bayonet at twenty- *388 seven, dollars each, bat does not stow that he ever sold or contracted to sell to the United States any Enfield rifles other than the six thousand referred to in this contract.
The proof is that the price paid by the United States for similar arms, between the date of the contract and the last delivery under it, was from twenty to twenty-three dollars per gun. This fact, we think, is conclusive of this case. According to the addition to indorsement on the contract, by General Butler, the value or amount to be paid for the Enfields was to be determined in the same way as provided for in the body of the contract in reference to the Liege guns — that is, the amount to be paid for these Enfields was to depend on what the United States “ may have paid for guns, like in quality and description,” or “ contracted to pay for to said Garrison.”
Now, as the United States had no other contract with Garrison for Enfields, there was nothing in that clause to fix and settle the price. The only other rule or standard given by which the value is to be determined is the price that was paid by the Ordnance department for guns of like quality. This the uncontradicted testimony shows was from twenty to twenty-three dollars per gun. Taking the highest price named for the whole six thousand guns delivered, it will be found that the claimant has already been more than paid the outside contract price for the guns. For it is very clear and plain to us that the effect of the addition to the contract by General Butler was for the twofold purpose of allowing the substitution of the Enfield for the Liege gun, and providingt he same mode of determining its value that had been stipulated for the other in the body of the agreement. There is nothing in the words of this addition that makes it obligatory on the government to pay the same price for these substituted guns that was agreed' upon for an arm.of a different description. But the same mode of determining the value is provided for in both cases, and that mode is by reference to such “ sum as the Ordnance' department may have paid for guns like in quality and description, or contracted to pay to said Garrison.” The Ordnance department had neither purchased nor contracted to purchase from Garrison any other Enfield rifles than those in suit. We must, therefore, resort to the only other mode provided of fixing the value, and that is, by the amount the Ordnance department paid for Enfield guns. This, the evidence makes clear, was from twenty to twenty-three dollars per gun. Taking the highest price as that to which the claimant is enti- *389 tied, and we find that be has already been overpaid the contract price of the guns delivered, as the'folio wing calculation shows :
6,000 guns at $23. $138, 000 00
2,800 guns at $27.■... $75, 600
3,200 guns at $20 . . 64, 000
- 139,600 00
Overpaid... 1, 600 00
If we take the average price paid for Enfields between the date of the contract and the last delivery of guns under it, the amount overpaid will he greatly increased, viz :
6,000 guns, at $20 30. $121,800 00
Amount paid as above. 139, 600 00
Overpaid..'... 17, 800 00
Under the construction we give to this contract, in any application or view that can be taken of the evidence, the claimant has no cause of action. His petition must, therefore, be dismissed.
PER CuRíam
: On the motion for a new trial.
1st. Neither the application nor the evidence offered to sustain it come within the rule by which the granting of new trials is regulated. We think due diligence would have discovered this evidence before the first trial.
2d. The evidence proposed to be introduced would not change the result. The document proposed to be put in shows that the United States, prior to the date of this contract, purchased the same guns as low as $19. The contract says : “or such less sum as the Ordnance department may have paid.” Nineteen dollars was surely a less sum, and might, under the construction insisted upon, be the standard of value. We think the contract intended to fix the fair current price at or about the time of delivery as the measure or standard of value.
3d. We have carefully reviewed our construction of the contract, and do not think we erred in the interpretation we gave it, or its supplement. On every ground, we think, both on the law and the facts, the case is in as favorable condition for claimant, for review before the Supreme Court, as it could be after another trial.
We overrule the motion.